# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JAMES JOHNSON,
*Prisoner Identification No. 57364-053,*

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil Action No. TDC-16-3468

## MEMORANDUM OPINION

James Johnson, currently confined at the Federal Correctional Institution in Cumberland, Maryland, has filed correspondence that has been construed as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Petition seeks the restoration of 724 days of revoked good conduct time, which Johnson lost pursuant to two disciplinary sanctions imposed while he was confined at the Federal Correctional Institution-Allenwood ("FCI-Allenwood") in White Deer, Pennsylvania. Pending before the Court is Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment, which the Court construes as an Answer to the Petition. *See* Rules 1(b) & 5 of the Rules Governing § 2254 Cases (permitting a court to apply these rules to any habeas corpus petition). For the reasons set forth below, the Court denies habeas corpus relief and dismisses the Petition.

## BACKGROUND

### I. First Sanction

On October 17, 2013, while Johnson was confined at FCI-Allenwood, he was charged with violating Disciplinary Code 111(A) for attempting to make alcohol or intoxicants. The charge arose from the recovery from a laundry room of a bag containing liquids. Video footage revealed that on October 16, 2013, Johnson had exited his cell carrying a white bag. He entered the laundry room and placed the bag on the window sill, where it was discovered by an officer a few hours later. According to the October 17, 2013 Incident Report, Johnson acknowledged that the contents of the bag were "intended to become intoxicants," "that he had made them," and that he had "placed them in the laundry room" on October 16, 2013. Answer Ex. 1 Attach. B at 11, ECF No. 9-2. In his written response to the Incident Report, Johnson stated, "I admit my wrong, but I didn't say everything in the report!" *Id.*

On October 22, 2013, the Unit Discipline Committee ("UDC"), a group of independent prison staff that reviews incident reports once staff investigations are complete, *see* 28 C.F.R. § 541.7 (2016), referred the October 17, 2013 Incident Report to a discipline hearing officer ("DHO"), an impartial decisionmaker who had no prior involvement in the matter, *see id.* § 541.8. The UDC recommended disciplinary segregation, the loss of good conduct time, a fine, and the loss of commissary privileges. Johnson received a copy of his rights, waived his right to a staff representative, and declined to request any witnesses.

The DHO held a hearing on October 31, 2013, during which Johnson "was advised of his [r]ights before the DHO, indicated he understood them," and stated, "The report is true; I accept responsibility for this." Answer Ex. 1 Attach. E at 14, ECF No. 9-2. Upon reviewing the evidence, the DHO issued a written report finding Johnson guilty of the rule violation. The DHO

2

based his ruling on the statements of the reporting officer, the video surveillance footage from October 16, 2013, a memorandum from the staff member who searched the laundry room, a photograph of the intoxicants, and Johnson's statements. The DHO stated that he found "the greater weight of the evidence" supported the conclusion that Johnson committed the prohibited act of "Making any Alcohol or Intoxicants (Attempted)." *Id.* at 16.

Based on the DHO's finding, Johnson was sanctioned with the loss of 41 days of good conduct time, forfeiture of 324 days of non-vested good conduct time, and the loss of eight months of telephone and visitation privileges. He was also sanctioned with 60 days of disciplinary segregation. The DHO found that the Code 111(A) conviction warranted the forfeiture of non-vested good conduct time, in addition to the disallowance of good conduct time, because the misconduct constituted a "highly aggravated offense which greatly jeopardizes the safety of staff and inmates" in part because "[v]iolent acts often follow" the use of intoxicants, such as during "distribution and payment." *Id.* at 16. Johnson received a copy of the DHO report. He unsuccessfully appealed the DHO decision.

## II. Second Sanction

On January 26, 2014, Johnson was charged with violating Code 112 for the use of alcohol or intoxicants. On January 25, 2014, Johnson had been asked to submit to a breathalyzer test. The result of the test was positive, as was the result of a second test taken 15 minutes later. On January 28, 2014, the UDC referred the charge to the DHO for further disposition based upon the test reading, a supporting memorandum, and photographs. The UDC recommended disciplinary segregation, the loss of good conduct time, loss of commissary privileges, and a fine. Johnson received a copy of his rights, waived his right to a staff representative, and declined to request any witnesses.

3

On February 12, 2014, the DHO conducted a hearing on the January 25, 2014 incident, during which Johnson "was advised of his Rights before the DHO, indicated he understood them," and stated, "The report is true." Answer Ex. 1 Attach. I at 20, ECF No. 9-2. After considering the statements of the reporting officer and Johnson, a photograph of the test reading, a staff memorandum, the testing log, and records of Johnson's Health Services Clinical Encounter, the DHO found the "greater weight of the evidence" supported the conclusion that Johnson had committed the prohibited act of "Use of intoxicants," a violation of Code 112. *Id.* at 20-21.

Johnson was then sanctioned with 60 days of disciplinary segregation, disallowance of 41 days of good conduct time, forfeiture of 400 days of non-vested good conduct time, and loss of eight months of visitation, telephone, and commissary privileges. The DHO found that the Code 112 charge warranted the forfeiture of non-vested good conduct time in addition to the disallowance of good conduct time because the misconduct constituted a "highly aggravated offense which greatly jeopardizes the safety of staff and inmates" in part because the use of intoxicants "potentially threatens" the "orderly running of the facility" and intoxicated inmates "are the target for violence and staff have great potential for injury responding to this violence." *Id.* at 22. Johnson received a copy of the DHO report.

## DISCUSSION

In his Petition to this Court, Johnson claims that the forfeiture of 724 days of non-vested good conduct time for the two disciplinary infractions was "unfair, excessive," "capricious, retaliatory," and violated his "due process and equal protection rights." Pet. 1, ECF No. 1. Respondent seeks dismissal of the Petition on the grounds that Johnson's rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States

4

Constitution were not violated, the sanctions were not capricious or excessive, and Johnson failed to exhaust his administrative remedies as to the Second Sanction.

**I.     Motion to Amend Petition**

With his Reply to Respondent's Answer, Johnson has filed a Motion to Amend to name FCI-Warden Timothy Stewart as the proper Respondent. Respondent had also stated in its Answer that "Warden Timothy Stewart should be substituted for the United States of America." Answer at 2 n.1, ECF No. 9-1. The United States Supreme Court has held that the proper respondent in a habeas petition is the custodian "with the ability to produce the prisoner's body before the habeas court." *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). Johnson's Motion shall therefore be granted, and the Clerk shall take all necessary steps to substitute Stewart for that of current Respondent United States of America. The Petition as amended is properly before the Court.

**II.    Exhaustion**

A federal prisoner seeking habeas review under 28 U.S.C. § 2241 must first exhaust available administrative remedies. *See McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004). To exhaust a claim arising from a DHO decision, an inmate must file an appeal with the Bureau of Prisons ("BOP") Regional Director and then, if the first appeal is unsuccessful, with the BOP General Counsel. *See* 28 C.F.R. §§ 542.14, 542.15. Exhaustion of administrative remedies for a § 2241 petition, however, is not a jurisdictional requirement. *See Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004) (describing the exhaustion requirement as applied to § 2241 as "prudential"). Accordingly, "even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching

5

the exhaustion question." *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (citing *Granberry v. Greer*, 481 U.S. 129, 131 (1987)). Here, Respondent argues that Johnson failed to exhaust his claim as to the loss of 400 days of good conduct time resulting from the Second Sanction, and Johnson concedes that he did not exhaust that claim because he believed it to be futile once the deadline had passed. The Court will nevertheless address Johnson's claims relating to both the First and Second Sanctions because, as discussed below, dismissal on the merits is warranted.

### III. Due Process

Respondent asserts that Johnson's Petition should be dismissed because he was afforded due process at the DHO hearings and because the DHO's findings were based on "some evidence." The Court agrees that there is no basis to overturn the DHO's findings because the hearings met basic due process requirements.

The due process rights afforded in prison disciplinary proceedings where an inmate faces the possible loss of diminution or good time credits were established by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), which provides that an inmate is entitled to: (1) advance written notice of the alleged violation; (2) a hearing at which the inmate is afforded the right to call witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) a written statement by the decisionmaker of the evidence relied upon and the reasons for any disciplinary action. *Id.* at 564-66, 570; *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990). In *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445 (1985), the Court also held that the findings must be "supported by some evidence in the record," a

standard which is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* at 454-55 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)); *see also id.* at 447-48, 457 (finding that a prison disciplinary board met due process requirements when it revoked inmates' good time credits based on an officer's indirect observation that they had assaulted another inmate, even though the evidence "might be characterized as meager"). There is, however, no constitutional right to confront and cross-examine witnesses or to have retained or appointed counsel at a prison disciplinary hearing. *See Wolff*, 418 U.S. at 567-68, 570; *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).

Here, Johnson's DHO hearings met the due process requirements set forth in *Wolff* and *Hill*. First, Johnson was given written notice of the charges on the day the reporting officers prepared the Incident Reports and before the DHO hearings. Second, on both occasions, Johnson was informed of his right to call witnesses and of his right to have a staff representative, both of which he waived. Third, the DHO provided written statements of the evidence he relied upon and the reasons for the disciplinary actions, which Johnson received. Specifically, the DHO stated that he relied on direct evidence from the reporting officers, photographs, memoranda, breathalyzer test results, a video surveillance broadcast, and Johnson's own statements that he attempted to make intoxicants and that he tested positive for intoxicants in violation of Codes 111(A) and 112, which is sufficient to constitute "some evidence" under *Hill*. Fourth, Johnson does not allege that he is illiterate or the hearings involved complex issues such that he was entitled to non-attorney representation that he was then denied. The DHO hearings resulting in the First and Second Sanctions, therefore, satisfied minimum due process requirements and were neither arbitrary nor capricious. *See Hill*, 472 U.S. at 457 (concluding

that the "findings of the disciplinary board" that revoked the inmates' good time credits was not "without support or otherwise arbitrary" where there was "some evidence to support the findings").

Finally, the sanctions ultimately imposed were within the authorized range. The BOP has promulgated regulations that identify prohibited acts by inmates. *See* 28 C.F.R. § 541.3. Subsections 111 and 112, relevant here, bar the introduction or making of any alcohol or intoxicants and the use of any alcohol or intoxicants, respectively. *Id.* Acts prohibited under both subsections are categorized as prohibited acts of the "greatest severity level." *Id.* Accordingly, the conduct is punishable by, among other things, "[f]orfeit[ing] and/or withhold[ing] earned statutory good time or non-vested good conduct time (up to 100%) and/or terminat[ing] or disallow[ing] extra good time." *Id.* Where Johnson received the due process to which he was entitled and received punishment in conformity with the table of penalties authorized for these violations, *see id.*, his due process claim fails.

### IV. Equal Protection

Johnson also raises an equal protection claim, alleging that the sanctions imposed were excessive when compared to those imposed on other inmates. In his Reply, he references other inmates who engaged in similar rule infractions, but who did not lose such large amounts of good conduct time.

The Equal Protection Clause requires that "all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir.

8

2001). Although Johnson claims that other inmates received lesser sanctions for similar disciplinary infractions, he has failed to show that the other inmates were otherwise similarly situated. For example, both of the inmates whose DHO reports were submitted by Johnson had been charged with simple possession of an intoxicant. Neither was, as Johnson was with the First Sanction, charged with attempting to manufacture intoxicants, which understandably could warrant more severe punishment. Likewise, neither was caught, as Johnson was with the Second Sanction, actually under the influence of an intoxicant. Finally, the submitted records do not show that either had, like Johnson, two similar violations within an approximately three-month period. Thus, the fact that other inmates received lesser sanctions for violations relating to intoxicants does not provide a sufficient basis to support an equal protection claim. Accordingly, the Court will deny the relief sought in the Petition.

## V. Certificate of Appealability

A certificate of appealability may issue if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* at 478.

Here, Johnson's claims are dismissed on the merits, and this Court finds that Johnson has not made the requisite showing to warrant a certificate of appealability. The Court therefore declines to issue a certificate of appealability. Johnson may still request that the United States

Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Court denies the requested relief and dismisses the Petition for Writ of Habeas Corpus. A separate Order shall issue.

Date: July 11, 2017

THEODORE D. CHUANG
United States District Judge